UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

TIMOTHY J. ROGERS,

        Defendant.

NO. CR-06-0212 WBS ALL

ORDER RE: MOTION TO SUPPRESS

----oo0oo----

On March 26 and April 9, 2007, a hearing was held on defendant Timothy Rogers' motion to suppress certain statements he made following a traffic stop on May 3, 2006. The court heard and considered the testimony of witnesses called both by the government and by the defendant, and after hearing the arguments of counsel and considering the written submissions of the parties, the court now makes the following findings of fact and conclusions of law.

I.  Findings of Fact

On May 3, 2006, at approximately 6:30 p.m., California Highway Patrol ("CHP") Officer Kelly Abercrombie observed a

1

vehicle driven by defendant operating with no brake lights, and accordingly initiated a traffic enforcement stop.  After defendant was informed of the reason for the stop, defendant told the officer that he had left his driver's license and proof of car insurance at home, and identified himself by writing his relevant personal information on a "post-it" note.  Seated in the right front passenger seat was a woman, later identified as Norma Gomez.

Abercrombie ran a check on defendant's driver's license, and the CHP dispatcher informed him that defendant's license had been suspended.  When asked, defendant informed Abercrombie that he had previously been arrested and was currently on parole.  Upon confirming with dispatch that defendant was on parole, Abercrombie asked Rogers to exit the vehicle and sit down on the sidewalk.  Rogers was not handcuffed at that time.  Abercrombie asked defendant if he had any weapons on his person.  Defendant replied that he did not, after which Abercrombie conducted a pat-down search that revealed no weapons.  Abercrombie then radioed for assistance.  Ms. Gomez remained seated in the passengers seat of the vehicle.

Clint Beloberk, a CHP Officer patrolling the area on a bicycle, arrived on the scene shortly thereafter.  Beloberk asked defendant if there were any weapons or drugs in the car.  Defendant did not answer immediately, and Beloberk observed that he appeared anxious and nervous.  Accordingly, Beloberk informed defendant that he could take a moment to think about his answer.  ABouta minute later, Beloberk approached defendant again and

asked him the same question.[1]  At this point, defendant stated that there was a gun under the driver's seat, and without further questioning, launched into an explanation of how he acquired the gun earlier in the day after disarming a man who threatened him with it.  Beloberk immediately went to the driver's side of the vehicle and found a loaded .38 Special revolver in an easily retrievable position under the driver's seat.  Defendant was handcuffed and Gomez was removed from the vehicle.  The officers then conducted a full search of the vehicle, which yielded a shotgun in the rear.

Defendant now moves to suppress his statement to the officers that there was a gun under the front seat, as well as his explanation about how it came to be there, arguing that any admissions made prior to receiving his Miranda warnings are inadmissable.

II. Conclusions of Law

Under Miranda v. Arizona, police are required to give certain warnings to a person in custody before interrogating him. 384 U.S. 436 (1966).  A person is "in custody" if he is under arrest, or if "his freedom of movement is restrained to a degree associated with formal arrest."  United States v. Brady, 819 F.2d

---

[1] Defendant told a somewhat different version of the events.  He testified that he was handcuffed immediately upon exiting the car, and that Officer Beloberk threatened to arrest Ms. Gomez if they eventually found contraband to which he had not admitted.  This testimony was directly contradicted by the testimony of the officers.  The court finds the officers' version of the events to be the more credible, especially considering defendant's admission that he lied to the officers initially and the fact that defendant has previously been convicted of at least 12 felonies.  See F. R. Evid. 609 (a witness' credibility may be impeached by evidence of conviction of a crime).

3

884, 887 (9th Cir. 1987) (citing New York v. Quarles, 467 U.S. 649, 655 (1984). The Ninth Circuit applies an "objective reasonable person test" to determine whether the stop "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination . . . ." Brady, 819 F.2d at 887 (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)).

However, in Quarles, the Supreme Court established the "public safety" exception to the Miranda requirement, which applies when police officers ask questions "necessary to secure their own safety or the safety of the public." 467 U.S. at 658-59 n.8. The analysis does not depend on the officer's subjective motivation in posing the questions, but whether the questions relate to an "objectively reasonable need" to protect the police or the public. Id. at 659 n.8; United States v. Reilly, 224 F.3d 986, 992 (2000) (citing Brady, 819 F.2d at 888 n.3). Additionally, "a pressing need for haste is not essential." United States v. Carrillo, 16 F.3d 1046, 1049 (9th Cir. 1994) (citing Brady, 819 F.2d at 885).

Under the circumstances of this case, the court finds that Abercrombie and Beloberk's questions were not designed to elicit testimonial evidence, i.e. they were not investigatory. Officer Beloberk testified that it was his standard practice in any encounter with a parolee to ask whether he has any weapons on him, and his conduct in this instance was consistent with this practice. It would seem to the court that if the officers' conduct was aimed at eliciting incriminating admissions, there would have been additional follow-up questions. See Carrillo, 16

4

1  F.3d at 1050-51 (noting the non-investigatory nature of an
2  officer's question because it called for a 'yes' or 'no' answer,
3  not a testimonial response, and because after defendant gave the
4  incriminating response, the officer asked no more questions).
5  Merely because there was a "relationship between the alleged
6  criminal activity and the subject matter of the inquiry does not
7  necessitate a finding that [the] question was investigatory."
8  Reilly, 224 F.3d 993 (citations omitted).
9      The officers' limited questions were designed to
10 control what could have developed into a potentially dangerous
11 situation.  This case closely parallels the facts in Brady, where
12 defendant was ordered out of his car, and asked whether he had a
13 gun.  819 F.2d at 887.  In holding that the "public safety"
14 exception applied, the Ninth Circuit noted that the car "stood
15 with its door open and the keys in the ignition.  This was a
16 rough neighborhood, and it was growing dark.  If Brady had a gun
17 in the passenger compartment of his car, a passerby or accomplice
18 could seize it.  It order to neutralize this danger, [the
19 officer] properly asked Brady whether he had a gun."  Id. at 888.
20     In this case, after stopping defendant for illegally
21 driving with no brake lights, and discovering that his license
22 was suspended, the officers learned that defendant was a felon on
23 parole. At that time, there was an unknown acquaintance still
24 sitting in the car. Additionally, defendant was acting furtively
25 in answering the prior questions.  If defendant had a gun in the
26 car, Ms. Gomez could easily have taken it and used it against the
27 officers.  To eliminate this very real possibility of danger, the
28 officer properly asked defendant whether he had a gun.  His

5

1  questions "were not designed to obtain evidence of a crime."
2  <u>Brady</u>, 819 F.2d at 889.  Accordingly, the "public safety"
3  exception is applicable in this case, and the court will allow
4  defendant's statements to be admitted.
5        IT IS THEREFORE ORDERED that defendant's motion to
6  suppress his statements made to police officers on May 3, 2006,
7  be, and the same hereby is, DENIED.
8  DATED:  April 20, 2007

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE